1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,          :        CR-06-154 (CPS)

   -against-                       :        U.S. Courthouse
                                             Brooklyn, New York
KHALID AWAN,                       :

             Defendant.          :        TRANSCRIPT OF PROCEEDINGS
                                     May 24, 2007
- - - - - - - - - - - - - - - X        12:30 p.m.

BEFORE:
       HONORABLE CHARLES P. SIFTON, U.S.D.J.


APPEARANCES:

For the Government:          ROSLYNN R. MAUSKOPF
                        United States Attorney
                        One Pierrepont Plaza
                        Brooklyn, New York  11201

                        By:  KELLIE T. CURRIE
                              LAWRENCE P. FERAZANI
                              Assistant U.S. Attorneys


For the Defendant:           SEAN M. MAHER, ESQ.
                        KHURRUM B. WAHID, ESQ.


Court Reporter:              Holly Driscoll, CSR
                        Official Court Reporter
                        225 Cadman Plaza East
                        Brooklyn, New York  11201
                        (718) 613-2274

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

2

THE COURT:  United States against Awan.

Who's appearing for the prosecution?

MR. CURRIE:  Kelly Currie and Lawrence Ferazani for the government.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

And for Mr. Awan --

THE CLERK:  Your Honor, there's an interpreter.

THE COURT:  Okay, there's an interpreter.

(Interpreter sworn by the clerk.)

THE CLERK:  Please state your name for the record.

THE INTERPRETER:  Upi Sharma.

THE COURT:  With respect to Mr. Awan's case, I think I should tell you right away that I don't contemplate that I will be able to arrive at the right sentence here for Mr. Awan because there are a number of issues which I don't think have been adequately addressed by the parties and some of which I'm obliged to alert you to to give both sides an opportunity to address them before the sentence is imposed, however, I'm going to go over some of those issues with you and then ask you for anything more that you'd thought to say on any of the other issues that have been raised in the papers.

First of all, just so we have the correct set of documents in front of us, there's a presentence report and an addendum -- two addenda to the report.

Mr. Maher, have you and your client had an

3

opportunity to review those three documents?

MR. MAHER: Yes, Your Honor.

THE COURT: How about the government?

MR. CURRIE: Yes, Your Honor.

THE COURT: Now, there are a number of issues that have been raised with respect to them and I'm going to, just to save everybody's time, going to address two of them that I have questions about and then give you an opportunity to tell me of anything else you think is at issue.

Quite frankly, the largest and most startling aspect of this presentence report is the somewhat astonishingly severe sentence that is recommended under the guidelines capped only by the statutory maximum for the counts for which Mr. Awan was convicted and looking for an explanation of how the sentence got to that astronomical height, it seems to me clear that there is a factor here that I have not considered in other cases and I, quite frankly, don't believe it has accurately been canvassed by either side in the papers and that is this guideline factor for, what is it called, the involvement of these offenses in the federal crime of terrorism which, as defense counsel has pointed out, not only tacks a very large increase on the base offense level for all three offenses but also results in the defendant's criminal history category being elevated to the highest level provided for in the sentencing guidelines.

4

Now, these are guidelines issues which means that one of the questions for me to consider is whether in the circumstances of this particular case to impose a non-guideline sentence which would not involve either to the same extent or at all these adjustments in the offense level and criminal history category because of the provisions with respect to the federal crime involving terrorism.

So, I want both sides to address along with whatever other matters you may wish to address what that guideline means, what the statute which is referred to by the guideline means and whether, to talk in traditional guideline language, this is a run of the mill case of this type or whether this doesn't fit the ordinary understanding of this kind of offense.

I have to tell you that in my personal experience, if I haven't said this before, that I have tried at least one other case involving allegations of Sikh terrorism in which the defendant was represented by William Kuntsler, now deceased, and which involved the defendant actually involved in an attempt on behalf of the Sikh terrorist movement to murder, I think it was an Indian government official visiting the United States fortunately under the scrutiny of the FBI which arrested him. But the sentence in that case several years ago, several decades ago was nothing like the sentence that's being proposed here which is not to say that all Sikh

5

terrorism cases should be sentenced in the same fashion or that things don't change over time or that we haven't learned from new experiences with terrorism that we didn't know back then but I also have to tell you that this Court since I've been sitting on it has been involved in terrorism cases involving the Irish Republican Army, the Puerto Rican Liberation Army which at one point attempted to blow up this courthouse, the Croatian Liberation groups, and I think I have to contend and you have to contend with the question whether we were all wrong in the more lenient sentences we imposed on people involved in disputes in Northern Ireland or when the Croatians blew up the luggage compartments at LaGuardia Terminal and the grand jury indicted both American citizens and others for involvement in an effort to liberate Puerto Rico from the United States.  So, before I impose anything approaching a life sentence on Mr. Awan, I want to understand a lot better than I have from both sides' submission on this to date on how this new guideline with respect to federal terrorism crimes fits into the scheme of things.

Now, another much more technical question I have is with respect to the grouping, the grouping of counts. Mr. Maher, what difference does that make, why is there a dispute here about the grouping of counts; if the presentence investigation report is right, is there any way that the sentence is going to be changed because we take the more

6

serious offense level for the two grouped counts rather than adding in all three?

MR. MAHER:  If the Court accepts the way that Probation has dealt with that, then, no, there would be no difference because it is not going to decrease the level.

THE COURT:  Oh, okay.

MR. MAHER:  But we were trying to maintain a record as far as how we calculated the guidelines and how through our calculations for each count how grouping would be conducted.

THE COURT:  Well, tell me how you think -- how would your grouping argument affect the sentence?

MR. MAHER:  Well, it would affect the sentence in that the number that we came out with was 17, a level 17 with a criminal history category of 2 I believe and I think that at that point the groupings wouldn't affect that level which was the level of the highest count.

THE COURT:  It would still be the highest count --

MR. MAHER:  It is.

THE COURT:  -- in your analysis?

MR. MAHER:  Your Honor is correct in that analysis.

THE COURT:  It would always be the highest count that would matter.  Okay.

Now, the third matter I want to bring up and have you address in additional submissions is what happened here with respect to -- I mean I heard bits and pieces of the

7

results of Mr. Awan's conversation with government officials before the trial here but in this case ordinarily I would hear what efforts at cooperation, as we call it, were made and what went wrong with them either because someone would be contending that there should have been a departure motion which since Mr. Awan went to trial I guess is out the window but, at a minimum, that there ought to be some consideration of this factor in determining whether post-conviction or pre-conviction he did make an effort to assist the government.

Is there any reason I can't be told by both sides what each side was trying to do and what happened and why it didn't work out?

MR. FERAZANI:  Your Honor, I could respond on behalf of the government.  Mr. --

THE COURT:  I'm not asking you to tell me what happened, I'm asking you is there any reason why you shouldn't put it in writing what happened and let me know?

MR. FERAZANI:  We can do that, Judge.

THE COURT:  All right.  Any reason I shouldn't be aware of that?

MR. MAHER:  No.

THE COURT:  Just as a matter of curiosity, when did Mr. Awan sit down and start talking with the government about this Khalistan movement, what was the time frame in which that happened and I tell you I'm raising this because another

question I have is what sort of credit, if any, Mr. Awan ought to get for the time that it's taken to bring this case to sentencing or whether he ought to get some credit for the kind of concurrency that could have evolved if the prosecution had gone forward earlier; so, just tell me when did the effort to sit down with the government begin?

MR. FERAZANI: February 17th of last year, Your Honor, and the second day was --

THE COURT: '06?

MR. FERAZANI: Yes, Your Honor, and February 20th was the second day.

THE COURT: Okay, that helps.

The other thing which stands in the background here, I mean you have to look at this -- I mean I'm not exactly a bystander, I certainly haven't gotten into this as deeply as the lawyers on either side but it does strike one that there is something peculiar about an individual being in prison for a period of time and then on the eve of his release prosecutors -- serving I take it a five-year sentence, on the eve of his release being prosecuted for a much more serious offense carrying a much more severe penalty.

I mean it would seem to me that any bystander looking at this would wonder is this overreaching by the government, is this an effort by the government to confront Mr. Awan with such a choice that it would force him either, on

the one hand, to make up information which is untrue in order to attempt to persuade the government to treat him more leniently, or would otherwise be some kind of coercive effort to have Mr. Awan confess or give up information which the government thinks it needs.

I mean I'm troubled by it and that's another reason why I want to know more about the temporal sequence in which these prosecutions occurred because I can tell you I would feel extremely uncomfortable sending Mr. Awan to prison for 45 years with the justification in mind that sometime during that 45 years he would break down and come up with information to satisfy the government's demand for information.  So, I think we've got to clarify, get this out in the open and give me the information that's necessary to allay my concerns or to confirm my concerns about what's going on here.  All right.

Well, that gives you something to address in further submissions.

Was there something more -- you haven't submitted a sentencing memorandum to me, you simply submitted a sentencing memorandum to the Probation Department, is that right?  I mean that's not --

MR. MAHER:  It was ECF-d, it was filed.

THE COURT:  I'm sorry, there was an ECF sentencing memorandum for me?

MR. MAHER:  There was not a -- no, there was not a

10

specific memorandum directed to you.

THE COURT:  It was submitted to the Probation Department which forwarded it to me?

MR. MAHER:  Correct.  My apologies.

THE COURT:  Well, at this point I think we're at the stage of a sentencing memo addressed to the Court.

Are there any other issues you had in mind to talk about today?

MR. MAHER:  Other than going into some of the issues that we have raised in our pleadings and papers before the Court.

THE COURT:  Yeah, like what did you want to -- which issues did you want to address?

MR. MAHER:  We wanted to address the issue of Rita and Claiborne.

THE COURT:  Of what?

MR. MAHER:  Of the case United States against Rita and United States against Claiborne and those are the cases on cert to the U.S. Supreme Court in which a decision is pending right now where the issue before the Supreme Court is whether the guidelines should be given any presumption of reasonableness in determining a sentence and whether the guidelines should be even considered as a benchmark at all in arriving at a sentence which I think then --

THE COURT:  In all cases whether they involve

terrorism or not?

MR. MAHER:  Correct, correct.

THE COURT:  Well, I'm glad I'm getting you back to focus on what really matters here which is this -- I mean what's really driving the sentence here is this federal crime of terrorism and I'm not going to sentence anybody without a better understanding of why it's appropriate to add 12 offense levels to each of three separate counts and then increase the criminal history category to a level six from a level three.

All right.  What else did you want to -- I mean when you've got that large an issue staring at you, it is kind of hard to see the situation in which this is going to come down to whether the guidelines trump 3553 or how they operate together.  So, what else did you have in mind to talk about today?

MR. MAHER:  Well, it was then going from that argument to describe to the Court why we believe that this should be entirely a non-guideline sentence and that the guidelines are merely one --

THE COURT:  Well, you know, that's what I'm getting at.

MR. MAHER:  Right.

THE COURT:  But are there factors arguing for a non-guideline sentence other than the extraordinary effect of the guidelines in this particular prosecution?

12

MR. MAHER:  Certainly.  I think if you go under the 3553 factors, all of those go towards a final sentence that would come no where near the number proposed by a guideline sentence.

THE COURT:  That's the conclusion but what particular circumstances of this case would have such extraordinary meaning under 3553 not recognized by the guidelines?  Anyway --

MR. MAHER:  Well, Your Honor, there's a number of things; first, I think obviously it would be much more helpful if the Court had our submission, it was over 35 pages where we go through in detail each of the factors.

THE COURT:  All right, well --

MR. MAHER:  And I can go through those now.

THE COURT:  No, I don't think that's necessary but I'm --

MR. MAHER:  I have a copy if the Court --

THE COURT:  I think we're talking about something different.  I've got a seven page submission that went to the Probation Department.  What are you talking about?

MR. MAHER:  I'm talking about our position on sentencing which we filed via Electronic Case Filing and that was --

THE COURT:  When, give me a hint?

MR. MAHER:  The date was --

13

THE COURT:  March 30th, 2007?

MR. MAHER:  No, no, it was about a week and a half ago.  It was Friday before last week.

THE COURT:  Is there some explanation for why that isn't in the sentence folder, Mr. Kessler?

(Clerk confers with the Court.)

THE COURT:  Well, we then may be just talking at cross purposes.  Maybe you've already done that.  In that submission have you already addressed this issue of what it means to have an adjustment for federal crime of terrorism?

MR. MAHER:  We touched on that but not to the level, the detail that the Court is expressing right now.

THE COURT:  I want to know what it means, how it got into -- first of all, how it got into Title 18; secondly, how it got into the sentencing guidelines, is this a Patriot Act --

MR. MAHER:  It is but we did not get into that in our submission and we would welcome the opportunity to do that.

THE COURT:  All right.  Well, then, I just don't have this 35 page report.  I do have the government's submission dated May 22nd.  Is there something I'm supposed to have in addition to that, Mr. Ferazani?

MR. CURRIE:  Nothing from the government, nothing in addition to our May 22nd letter, Judge.

14

THE COURT:  And was that in response to this ECF filing or not?

MR. CURRIE:  Yes, Your Honor, it was in response to that and also addressed some of the issues raised in their submission to the Probation Department.

MR. MAHER:  I believe this was filed on the 18th of May for this hearing.

THE COURT:  Your submission was the 18th of May?

MR. MAHER:  Yes.

THE COURT:  Well, the government's submission also didn't alert me to the existence of this submission.

All right.  So, how long do you think it would take both sides, within a week could you put together a response to these concerns and can you both do that in exchange?

MR. MAHER:  We can confer on a date, Your Honor.

THE COURT:  Do it right now because I don't want to let you go without dates.

MR. CURRIE:  Your Honor, we will have our submission ready whenever the Court requires it.

THE COURT:  Let's see, today is the 24th, all right, could both sides exchange additional submissions by June 1st which is a Friday of next week and then respond to each other's submission, if a response is necessary, by June 6th and I'll put this on for sentencing then --

MR. MAHER:  Your Honor, could we have --

15

THE COURT:  -- June 11th for sentencing.

MR. MAHER:  Could we have the 4th, June 4th be the first day for submissions, just the following Monday from the Friday you proposed?

THE COURT:  All right.  June 4th and then both sides respond by June 11th and sentencing adjourned till June 14th at noon.  Okay.

MR. MAHER:  Could we have either the 20th or the 21st of June, Your Honor?

THE COURT:  Why?

MR. WAHID:  Your Honor, I'm starting a murder trial the week of the 4th and I'm just concerned that it will go more than two weeks.

THE COURT:  How about if we put the sentencing on -- what did I say?

MR. MAHER:  You said the 11th.

THE COURT:  Sentencing the 21st.

MR. WAHID:  That would be great, Judge.

THE COURT:  All right.  And I guess you don't have to submit another copy of your ECF report.

MR. MAHER:  I'll submit a hard copy to the Court right now, Your Honor.

THE COURT:  How did that happen, it gets submitted and we don't get a copy?

(Clerk confers with the Court.)

HOLLY DRISCOLL, CSR
OFFICIAL COURT REPORTER

16

THE COURT:  You're sure that this was filed and accepted on ECF?

MR. MAHER:  Absolutely, that's how the government knew to respond, Your Honor.  I got a hit also.

THE COURT:  All right.  Thank you.

MR. MAHER:  What time for sentencing on that date, Your Honor?

THE COURT:  12:30.

(Pause.)

THE COURT:  Let's make it noon so we'll have a chance at lunch.

(End of proceedings.)

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT FROM MY NOTES IN THIS PROCEEDING.

OFFICIAL COURT REPORTER
U.S. DISTRICT COURT

HOLLY DRISCOLL, CSR
OFFICIAL COURT REPORTER